IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL BAUGH,    No. C 07-0448-CW (HC)

    Petitioner,    ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
  v.

BEN CURRY, Warden,

    Respondent.
                              /

On March 22, 2007, Petitioner Michael Baugh, a state prisoner incarcerated at the Correctional Training Facility at Soledad, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging as a violation of his constitutional rights the August 1, 2005 denial of parole by the California Board of Parole Hearings (Board).[1]  On March 10, 2008, Respondent Warden Ben Curry filed an answer.  Petitioner timely filed a traverse. Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

On January 8, 1982, Petitioner, age nineteen, and Michael Cowles, age sixteen, went on foot on Highway 41 toward Fresno with

---

[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings. Cal. Penal Code § 5075(a).

the intent of stealing a vehicle in order to go to a movie in Fresno. Resp's Ex. B at 10. They had a .22 rifle and a .22 caliber pistol. Id. They approached the home of the victim, seventy-three year old Illean Randall, through the woods so they would not be seen. Id.; Resp's Ex. C at 5. They watched the victim return home from grocery shopping. Id. After the victim went into her home, Petitioner instructed Cowles to knock on the door and ask if he could use the phone. id. The victim denied Cowles' request. Id. As they approached another door of the home, the victim turned on a porch light and moved a door window curtain from the inside. Id. Petitioner fired the sawed-off shot gun through the door, striking the victim in the chest. Resp's Ex. B at 10-11. Petitioner then cut through the screen door, entered the home and obtained the victim's car keys. Id. at 11. Petitioner and Cowles drove away, leaving the victim to die, and attended a movie and an arcade. Id. The next day, they changed the vehicle's license plates, purchased black spray paint and painted the car to change its appearance. Resp's Ex. C at 4.

On October 26, 1982, Petitioner was found guilty following a jury trial of a felony violation of California Penal Code § 187, murder in the first degree, with special circumstances and use of a firearm in the commission of the offense. Petitioner was also found guilty of felony violations of Penal Code §§ 211 and 459, robbery and burglary, and a violation of California Vehicle Code § 10851, auto theft, and was found to have used a firearm in the commission of these offenses. Resp's Ex. C at 2. Petitioner was sentenced to twenty-seven years to life in prison. Resp's Ex. A.

Petitioner had not been convicted of any crimes prior to the commitment offense. Resp's Ex. C at 8. In an interview with a probation officer, Petitioner admitted that he had a drinking problem, that he had been hospitalized for an alcohol overdose when he was sixteen, that he first used marijuana in the ninth grade and that he had used marijuana on the night of the commitment offense. Id. at 10, Ex. B at 37. At the beginning of his incarceration, Petitioner attended Alcoholics Anonymous for three or four years, but in 1988, he was found in possession of inmate-manufactured alcohol. Id. at 37. He has taken no self-help courses or therapy programs during the last twenty-two years of his imprisonment. Id. He has completed one education program in landscaping horticulture. Petitioner has a job offer from a landscape company, but no viable residential plans. A July 18, 2005 report from Dr. Macomber, a clinical psychologist, indicates that, during his interview, Petitioner related in a sarcastic manner with an attitude of unconcern. Id. at 25. Dr. Macomber noted that Petitioner showed no remorse for the commitment offense and denied committing it. Id. Dr. Macomber's diagnosis was personality disorder with antisocial and schizoid features. Id. Dr. Macomber noted that Petitioner's potential for dangerous behavior was below average in comparison to other inmates and he did not appear to be a violent person at that point in his life. Id. at 26.

After deliberations, the Board concluded that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released. Id. at 38-39. The Board found that the commitment offense was

especially cruel and callous.  Id.  The crime was also calculated based on the facts that Petitioner and his partner had guns, watched the victim unload groceries from her car and brutally shot her and stole her car.  Id. at 39.  The Board found that Petitioner's psychological reports were inconclusive regarding his danger to society if released.  Id. at 38.  The Board recommended that Petitioner engage in therapy and self-help classes to face, discuss, understand and cope with stress in a non-destructive manner.  Id. at 38.  The Board believed that, until Petitioner made progress in therapy, his behavior would be unpredictable.  Id.  Also, the Board found Petitioner's motivation to be questionable.  Id.  The Board commended Petitioner for his good work reports in the culinary area, but this positive factor did not outweigh the factors of unsuitability.  Id. at 39.  The Board concluded that it would not be reasonable to expect that Petitioner would be found suitable for parole within the next four years.  Id.

    Petitioner filed a petition for a writ of habeas corpus in the Madera County Superior Court challenging the Board's decision.  On October 11, 2006, the court denied the petition in a one-sentence decision, stating, "A review of the exhibits attached to the petition show there was 'some evidence' to support the Board's decision."  Resp's Ex. D.  Petitioner filed petitions in the California court of appeal and the California Supreme Court which summarily denied relief.  Resp's Exs. E and F.

## STANDARD OF REVIEW

    Under the Antiterrorism and Effective Death Penalty Act of

4

1996 (AEDPA), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, Williams, 529 U.S. at 407-09, while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting

5

the writ. See id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. Id. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In the present case, the only state court to address the merits of Petitioner's claim is the Madera County superior court.

## DISCUSSION

Petitioner argues that his due process rights were violated by the Board's decision to deny him parole because that decision was not supported by "some evidence" in that he is not currently a threat to the public safety.

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v.

6

California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)).[2] An examination of the entire record is not required nor is an independent weighing of the evidence. Hill, 472 U.S. at 455. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the administrative board. Id.

When assessing whether a state parole board's unsuitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Sass, 461 F.3d at 1128. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle. Id.

California law provides that a parole date is to be granted unless it is determined "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . ." Cal. Penal Code § 3041(b).

The California Code of Regulations sets out the factors

---

[2] Respondent argues that, under AEDPA, the "some evidence" standard of Hill does not apply to parole suitability hearings because the United States Supreme Court has not applied it in that context. Respondent claims that the due process protections to which California prisoners are entitled by clearly established Supreme Court authority are limited to an opportunity to be heard and a statement of reasons for denial. This position, however, has been rejected by the Ninth Circuit.

showing suitability or unsuitability for parole that the parole authority is required to consider. Cal. Code Regs. tit. 15, § 2402(b). These include "[a]ll relevant, reliable information available," such as:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Id.

Circumstances tending to show unsuitability for parole include the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. § 2402(c). This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id.

Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental

8

health problems related to the offense, and serious misconduct in prison or jail.  Id.

Circumstances tending to support a finding of suitability for parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release.  Id. § 2402(d).

Relying on Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003), Petitioner argues that in denying parole the Board improperly relied on static factors to find that he was a threat to public safety.

In Biggs, the Ninth Circuit found that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements, using the "some evidence" standard.  However, in dicta, the Biggs court stated that courts may also consider the parole board's decision-making process over time:  "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . .  A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Biggs, 334 F.3d at 916-17.

The Ninth Circuit's opinion in Irons v. Carey sheds further

9

light on whether reliance on an immutable factor such as the commitment offense violates due process. 505 F.3d 846, 850 (9th Cir. 2007). In Irons, the District Court for the Eastern District of California granted a habeas petition challenging the parole board's fifth denial of parole where the petitioner had served sixteen years of a seventeen years to life sentence for second degree murder with a two-year enhancement for use of a firearm, and where all factors indicated suitability for parole. 358 F. Supp. 2d 936, 947 (E.D. Cal. 2005). The Ninth Circuit reversed. The Ninth Circuit limited its holding to inmates deemed unsuitable prior to the expiration of their minimum sentences and left the door open for inmates deemed unsuitable after the expiration of their minimum sentences. Id. at 854. The Ninth Circuit stated:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Id. at 853-54. The court recognized that at some point after an inmate has served his minimum sentence, the probative value of his commitment offense as an indicator of an unreasonable risk of danger to society recedes below the "some evidence" required by due process to support a denial of parole. Id.

10

Like the petitioner in <u>Irons</u>, Petitioner has not served his minimum sentence. Petitioner was sentenced to twenty-seven years to life. At the time of the 2005 hearing before the Board, he had completed only twenty-three of his twenty-seven year minimum sentence. Petitioner's due process rights were not violated when the Board deemed him unsuitable for parole before his minimum sentence had been served.

Further, the Board relied on more than the single "unchanging factor" described in <u>Biggs</u> in denying Petitioner parole. Although the cruel nature of Petitioner's commitment offense weighed heavily in the Board's determination, especially the unprovoked, premeditated attack on an elderly victim and the trivial motive in relation to the offense, the Board was also significantly influenced by the fact that Petitioner had programmed in a limited manner while incarcerated in that he had attended Alcoholics Anonymous meetings for only three to four years and had completed only one vocational program in landscaping. Resp's Ex. B at 37-38. The Board was also concerned with Petitioner's lack of a residential plan if he were released. <u>Id.</u> The Board found that Petitioner "needs therapy in order to face, discuss, understand and cope with stress in a nondestructive manner. Until progress is made, the prisoner continues to be unpredictable." <u>Id.</u> at 38. Thus, the Board relied on factors other than the commitment offense for some evidence that Petitioner was unsuitable for parole.

Petitioner points out that the Board was incorrect in several of its findings. For instance, Petitioner argues that, in the 1980's, he submitted "dozens of Bible study certificates, got a

11

1 General Education Degree (GED) while incarcerated, and has forty-
2 eight units of college courses." Traverse at 6-7.  However, even
3 though the Board did not include all of Petitioner's academic
4 achievements in its findings, it did take note of them at the
5 hearing.  Resp's Ex. B at 27.  The Board took note of the fact
6 that Petitioner received his GED in 1984 and that he took his last
7 college class in 1991, 1992 or 1993.  Id.  These facts did not
8 allay the Board's concern that he has not been involved in
9 academic activities for the last fifteen years of his
10 incarceration.

11 Petitioner points out that Dr. Macomber's psychological
12 evaluation found that he doesn't appear to be a violent person at
13 this point in his life and his violence potential when compared to
14 other inmates is below average, he takes responsibility for his
15 actions, he has gained maturity over the years and he will not
16 benefit from psychotherapy.  The Board did note the positive
17 findings in Dr. Macomber's report, but was concerned about
18 Petitioner's lack of motivation and ability to deal with stress.

19 Petitioner argues that his 1988 offense of possession of
20 alcohol is too remote in time to constitute some evidence of
21 danger to society.  However, as noted by the Board, Petitioner had
22 a history of alcohol abuse prior to his incarceration, he had used
23 marijuana the night of the commitment offense and he only attended
24 Alcoholics Anonymous meetings for three or four years during the
25 early part of his incarceration.  These facts constitute some
26 evidence that he would be a danger to society if released.

27 Petitioner argues that the membership of the Board violates
28 his due process rights because all members are political

12

1  appointees from law enforcement or victims rights groups and are
2  thus biased against him.  The Due Process Clause establishes the
3  right to an impartial and disinterested tribunal.  Withrow v.
4  Larkin, 421 U.S. 35, 46 (1975).  However, members of a tribunal
5  are presumed to act with honesty and integrity.  Id. at 47;
6  Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995).  To overcome
7  this presumption, a plaintiff "must show that the adjudicator has
8  prejudged, or reasonably appears to have prejudged, an issue."
9  Id.  Petitioner's conclusory statement that the Board is biased
10 against him does not constitute the showing necessary to overcome
11 the presumption of impartiality.  Therefore, this claim is denied.
12      In sum, the petition must be denied because the state court's
13 decision affirming the Board's denial of parole was not contrary
14 to or an unreasonable application of Supreme Court authority or an
15 unreasonable application of the facts in light of the evidence in
16 the record.

                              CONCLUSION

18      For the foregoing reasons, the petition for a writ of habeas
19 corpus is DENIED.  The Clerk of the Court shall enter judgment and
20 close the file.
21      IT IS SO ORDERED.

23 Dated: 1/28/09                    _____
24                                   CLAUDIA WILKEN
                                     United States District Judge